UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHERYL A. MICHELS,

                        Plaintiff,

     v.                                                       **DECISION AND ORDER**
                                                                        04-CV-939S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

       1.       Plaintiff Cheryl A. Michels challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since May 2001, due to back problems. Plaintiff contends that her impairment has rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

       2.       Plaintiff filed an application for disability insurance benefits on March 14, 2003. Her application was initially denied. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Donald M. Graffius on August 17, 2004, at which time Plaintiff appeared with counsel and presented testimony. The ALJ considered the case *de novo*, and on September 23, 2004, issued a decision denying Plaintiff's application for benefits. On November 4, 2004, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on November 24, 2004, challenging Defendant's final decision.[1]

       3.       On August 22, 2005, and October 24, 2005, respectively, the Government and Plaintiff moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal

---

[1] The ALJ's September 23, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Rules of Civil Procedure.[2]

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the

---

[2] Defendant filed a memorandum of law in support of her motion and a reply memorandum of law in opposition to Plaintiff's motion.  Plaintiff filed a memorandum of law in support of her own motion for judgment on the pleadings.

2

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 18);[3] (2) Plaintiff's lumbar disc disease, asthma, and migraine headaches are "severe" impairments within the meaning of the Act (R. at 18); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 18); (4) Plaintiff retained the residual functional capacity for a full range of light work with some limitations (R. at 19); and (5) Plaintiff was unable to perform her past relevant work as a child care aid/worker and child monitor. (R. at 19). Further, the ALJ concluded that given Plaintiff's residual functional capacity, there was not a significant erosion of her remaining occupational base. (R. at 19). Considering Plaintiff's status as a younger individual with a high school education, her work experience, and her residual capacity for light work, the ALJ determined that Medical-Vocational Rule 202.21 directed a finding of "not disabled." (R. at 19). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, September 23, 2004. (R. at 19).

10. Plaintiff's first challenge to the ALJ's decision is that he improperly rejected the opinion of Plaintiff's treating physician, Dr. Thomas Bogner. (R. at 17). Plaintiff makes

---

[3] Citations to the underlying administrative record are designated as "R."

4

specific reference to Dr. Bogner's July 2004 physical capacities evaluation, in which he opined that she was capable of performing a wide range of light work on a part-time basis only. (R. at 168, 187-90). This Court notes that on March 18, 2003, Dr. Bogner opined that Plaintiff had been "totally disabled" since June 10, 2002, as a result of a "workers comp accident [dated] 6/29/87 and 1/27/92." (R. at 149). Plaintiff contends that by rejecting Dr. Bogner's opinions regarding her restrictions, the ALJ did not properly apply the "treating physician rule."

11.     According to the "treating physician rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

12.     Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

13.  At the same time, a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act.  See 20 C.F.R. § 404.1527(e).  This is particularly true when a treating physician renders an opinion of total disability in connection with a claim for workers compensation benefits.  Because there are different statutory tests for disability under workers' compensation statutes and the Social Security Act, an ALJ may reasonably disregard a treating physician's conclusion regarding a plaintiff's disability for workers compensation purposes.  See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); see also Bosley v. Heckler, 879 F. Supp. 296, 304 (W.D.N.Y. 1995).

14.  Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Bogner's conclusions regarding Plaintiff's capabilities.  Under the circumstances, it was appropriate for the ALJ to reject Dr. Bogner's opinions because they are inconsistent with one another and with the totality of the medical evidence.  For example, Dr. Bogner opined in March 2003 that Plaintiff had been "totally disabled" since June 10, 2002, as a result of "workers comp" accidents in 1987 and 1992.  (R. at 149, 156).  Thereafter, in an August 23, 2003 letter, Dr. Bogner stated, "it has been pointed out to me that several of my previous reports indicate that Ms. Michels [sic] limitations had existed for 17 years."  (R. at 193).  He clarified that in his previous reports, he meant to indicate that Plaintiff's condition originated in 1987, not that she had been functionally disabled since that time. (R. at 193). Ultimately, Dr. Bogner concluded, "[i]t is my opinion that the limitations I have indicated in my prior reports and those recited herein have

existed since [Plaintiff] left work in May of 2001." (R. at 193). Dr. Bogner's second conclusion, however, is contradicted by his July 2004 physical capacities evaluation, wherein he opined that Plaintiff was capable of doing a wide range of light work on a part-time basis, that she could alternate between sitting and standing for five hours out of an eight hour day, and that she would need to lie down for an hour and one-half. (R. at 168, 187-90).

Moreover, Dr. Bogner's opinions that Plaintiff had been severely restricted since May of 2001 or "totally disabled" since June of 2002 are belied by Plaintiff's treatment record and the objective medical findings therein. That is, the record reflects that Petitioner did not seek any treatment for her back until June 2002, over one year after the alleged date of onset. On November 18, 2002, Dr. Bogner noted that despite Plaintiff's subjective complaints of back pain, her MRI revealed no evidence of significant central spinal stenosis, focal disc protrusion, focal nerve root impingement, or nerve root displacement. (R. at 153-154).

On January 21, 2003, neurologist Dr. Michael Landi, reported that although Plaintiff had some difficulty getting on and off the examination table, her straight leg raise test was negative. (R. at 123). After physically examining Plaintiff on March 27, 2003, Dr. Landi noted that she exhibited no distress, was able to get on and off the examination table without significant difficulty, and demonstrated a normal gait and station. (R. at 120). Accordingly, Dr. Landi did not recommend surgery, but rather, suggested that Plaintiff undergo a pain management evaluation, try aquatic therapy, and pursue a weight loss program, measures that -- in his opinion -- could "substantially improve her back pain." (R. at 120). When Dr. Jerry J. Tracy, III, evaluated Plaintiff on April 2, 2003, for a Worker's

Compensation consultation, he noted that she was not in acute distress and showed no overt increased pain behaviors. (R. at 165). Dr. Tracy also encouraged Plaintiff to increase her activity and, with improved pain relief, undertake physical therapy. (R. at 166).

Plaintiff's own description of her lifestyle and daily activities suggest that she was not debilitated, as Dr. Bogner's opinions would suggest. See 20 C.F.R. § 404.1529. In her function report and at her hearing, Plaintiff indicated that she drove her car, cared for and played with her young son, went for walks, went shopping for clothing and food, cooked meals, washed the dishes, and let her dogs outside, all on a daily basis. (R. at 81-83, 209-11). At her hearing, Plaintiff testified that she applied for jobs in child care -- the very field of work in which she claimed to have injured herself -- in 2001, 2002, and 2003. (R. at 206).

Based on the totality of the record, this Court finds that it was not improper for the ALJ to acknowledge Dr. Bogner's restrictive medical opinions, but ultimately predicate his disability determination on the objective medical evidence. Dr. Bogner's conclusions that Plaintiff had been totally disabled or otherwise severely restricted since 2001 or 2002 are inconsistent with one another and are not supported by the objective medical findings. Therefore, the ALJ was not compelled to afford Dr. Bogner's conclusory opinions controlling or extra weight in determining whether Plaintiff was disabled. See 20 C.F.R. § 404.1527 (stating that conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act). Under the circumstances, it cannot be said that the ALJ arbitrarily substituted his own judgment for that of the treating physician. Rather, this Court finds that the ALJ appropriately rejected Dr. Bogner's evaluation in favor of the objective medical evidence and supportable medical opinions in the record.

16.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions based on that evidence.  It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence, including Plaintiff's treating physicians, in deciding that Plaintiff is not disabled within the meaning of the Act.  Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's Motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   February 21, 2007
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge